IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SALLYPORT COMMERCIAL FINANCE, LLC, a Delaware limited liability company, <br><br> Plaintiff, <br><br> vs. <br><br> PYRAMID NETWORK SERVICES, LLC, a New York limited liability company. <br><br> Defendant. | § § § § § § § § § § § § <br><br> Civil Action No.: |

**COMPLAINT FOR (1) CLAIM OF HOLDER IN DUE COURSE FOR PAYMENT ON NEGOTIABLE INSTRUMENTS, (2) BREACH OF WRITTEN INDEMNITY AGREEMENT, (3) ACCOUNTING, and (4) DECLARATORY RELIEF**

Plaintiff, Sallyport Commercial Finance, LLC, a Delaware limited liability company ("Sallyport" or "Plaintiff") alleges the following for its Complaint against Defendant Pyramid Network Services, LLC, a New York limited liability company ("Pyramid" or "Defendant"), as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a Delaware limited liability company with its headquarters in Sugar Land, Fort Bend County, Texas. Plaintiff is in the business of factoring and holds a duly issued finance lenders license from the State of California. Plaintiff has three (3) members, which are: (i) Sallyport Holdings LLC, a Delaware limited liability company ("Sallyport Holdings"), (ii) individual, Nicholas Hart, and (iii) individual, Emma Hart. Nicholas and Emma Hart are domiciled in the State of Texas. Sallyport Holdings has four (4) members, which are (i) Sallyport Investments, LLC, a Texas limited liability company ("Sallyport Investments"), (ii) a private trust, and (iii) two other individuals. The two individuals, who are members of Sallyport Holdings, are domiciled in the State of Texas. The trustee of the private trust, which is a member

1

of Sallyport Holdings, is an individual who is domiciled in the State of Texas, and the private trust's beneficiaries are minors who are also domiciled in the State of Texas. Finally, Sallyport Investments has one member, who is an individual that is also domiciled in the State of Texas. Therefore, Plaintiff is a citizen of the State of Texas.

2. Plaintiff is informed and believes, and based thereon alleges, that Pyramid is, and at all relevant times hereto was, a New York limited liability company and that Pyramid's principal place of business is in East Syracuse, Onondaga County, New York. Plaintiff is further informed and believes, and based thereon alleges, that Pyramid has five members: (i) Ronald J. Brunozzi, (ii) Joseph R. Scuderi, (iii) Joseph T. Scuderi, (iv) John L. Clark, and (v) The Weichert Family Limited Partnership, a New York limited partnership. Plaintiff is informed and believes, and based thereon alleges, that individuals, Ronald J. Brunozzi, Joseph R. Scuderi, and John L. Clark, are each domiciled in the State of New York. Plaintiff is informed and believes, and based thereon alleges, that the general partners in The Weichert Family Limited Partnership are Cyrus W. Weichert and Melissa A. Weichert, who are individuals domiciled in the State of Georgia. Plaintiff is informed and believes, and based thereon alleges, that the limited partner of The Weichert Family Limited Partnership is Pyramid Brokerage Company, Inc., a New York corporation with its principal executive office in East Syracuse, Onondaga County, New York. Therefore, Defendant is a citizen of the State of Georgia and the State of New York.

3. This Court has subject matter jurisdiction over this matter under its diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a), because: (a) the amount in controversy exceeds $75,000.00 exclusive of interest and costs; and (b) Plaintiff and Defendant are citizens of different states. *See* 28 U.S.C. § 1332(a).

4. This Court has general personal jurisdiction over Defendant, because Defendant

maintains and/or has maintained substantial, continuous, and systematic contacts with this state and has purposefully availed itself of the benefits of doing business in this state. Defendant maintains minimum contacts with this state sufficient to subject it to service of process and sufficient to comply with due process of law in this action. Defendant is a foreign limited liability company registered with the Texas Secretary of State to do business in the State of Texas, and Defendant has appointed a Texas agent for service of process: C T Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. Additionally, Plaintiff's claims herein related to a written Indemnity Agreement (as defined below) between Plaintiff and Defendant. The Indemnity Agreement includes a mandatory forum selection and venue provision requiring actions to enforce or otherwise related to the agreement to be filed in state or federal courts of Harris County, Texas. As such, Defendant waived any objection to the personal jurisdiction of this Court with respect to the claims herein.

5. This Court also has specific personal jurisdiction over Defendant because Plaintiff's claims are related to Defendant's activities and contacts within the state.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district. Venue in this Court is also proper pursuant to 28 U.S.C. § 1391(b)(3), because Defendant is subject to the Court's personal jurisdiction with respect to this action.

## SUMMARY OF THE CASE

7. This action concerns Defendant's breach of an Indemnity Agreement with respect to payments due on certain accounts receivable assigned to Plaintiff. The accounts receivable arose from goods and services supplied to Defendant's cell phone tower construction and maintenance in the State of Texas. Non-party, PROTEUS Services, LLC a Texas limited liability

company ("Proteus"), supplied the goods and services to Defendant's cell phone tower projects near Fort Hood, in Harris County, Texas, and at other locations in the State of Texas. Proteus sold and assigned the accounts receivable to Plaintiff under a factoring relationship. Plaintiff served Defendant with a notice of Proteus' assignment of the accounts receivable to Plaintiff. The notice instructed Defendant to pay the accounts receivable to Plaintiff.

8. In December 2021, Defendant stopped payment on a check that Defendant had issued to Plaintiff on the accounts receivable generated by Proteus. Defendant advised Plaintiff that it stopped payment, because an alleged creditor of Proteus, Fundura Capital Group ("Fundura"), made its own payment demand upon Defendant. The demand concerned the alleged obligations of Proteus to Fundura.

9. In response, in January 2022, Defendant and Plaintiff entered into a written Indemnity Agreement by which (i) Defendant agreed to commence paying Sallyport amounts due on the Assigned Accounts (as defined in the Indemnity Agreement) within three days after execution of the agreement and (ii) Sallyport agreed to indemnify Defendant against claims of Fundura to the extent of such payments made and as provided in the Indemnity Agreement. The parties fully executed the Indemnity Agreement by January 12, 2022. A true and correct copy of the Indemnity Agreement is attached hereto as **Exhibit "1"** and incorporated herein by this reference.

10. On January 12, 2022, Defendant issued three new checks in the total amount of $246,584.60 to Sallyport on the accounts receivable generated by Proteus. Defendant sent the checks by overnight mail to Plaintiff. On receipt, Plaintiff immediately deposited the checks with its bank. Thereafter, Defendant issued a stop payment order again, stopping payment on the three new checks in response to a renewed payment demand and subpoena by Fundura. Defendant

improperly stopped payment on the new checks despite having entered the Indemnity Agreement with Sallyport with its protections. Sallyport now seeks to recover the $246,584.60 on the negotiable instruments, plus additional amounts due under the Indemnity Agreement on the accounts receivable generated by Proteus and assigned to Sallyport.

### BACKGROUND ON FACTORING RELATIONSHIP BETWEEN SALLYPORT AND DEFENDANT'S CONTRACTOR, PROTEUS

11. Sallyport is in the factoring business, which involves the purchase of Accounts (as defined below) from businesses.[1] In factoring, the entity that purchases the Accounts is known as the "Factor" or "Purchaser" of the Accounts. The entity from whom the Factor purchases the Accounts is the "Factoring Client" or "Seller" of the Accounts. The Factoring Client's customer, who owes payment on the Accounts, is an "Account Debtor."

12. As a Factor, Sallyport advances funds to its Factoring Clients by purchasing the Factoring Client's Accounts.[2] Sallyport also takes a security interest in the Factoring Client's assets (including but not limited to all of its Accounts) to secure repayment and performance of

---

[1] **Applicable Law.** In this diversity jurisdiction action, the court is bound to apply state substantive law and federal procedural law. *Exxon Corp. v. Burglin*, 42 F.3d 948, 950 (5th Cir. 1995). In determining the applicable state substantive law, "[a] federal court sitting in diversity jurisdiction must apply the choice of law rules of the forum state when a conflict of law arises." *Burdett v. Remington Arms Co., L.L.C.*, 854 F.3d 733, 735 (5th Cir. 2017). Here, Article 9 of the Uniform Commercial Code supplies the choice of law principles, because Article 9 governs both the sale of accounts from Proteus to Plaintiff and Plaintiff's corresponding security interest in Proteus' accounts. TEX. BUS. & COM. CODE ANN. § 9.109(a)(1)-(3). Under section 9-301 of the Uniform Commercial Code, the law of the State of Texas (where Proteus is located) governs the perfection and priority of Plaintiff's security interest in the accounts generated by Proteus. TEX. BUS. & COM. CODE ANN. § 9.301(1). As to other matters, Section 1-301(a) of the Uniform Commercial Code provides for the enforcement of the parties' agreed choice of law provided the choice bears a reasonable relation to the chosen state. TEX. BUS. & COM. CODE ANN. § 1.301(a). Here, Plaintiff and Proteus chose the law of the State of Texas to govern their factoring agreement. Further, Plaintiff sues Pyramid for breach of an Indemnity Agreement, which was expressly governed by Texas law. Thus, Texas law should govern. For purpose of this Complaint, and without waiver of the application of other states' laws, Plaintiff cites to Texas' adoption of the Uniform Commercial Code.

[2] Texas Business and Commerce Code § 9.102(a)(2), in relevant part, defines "[a]ccount" as "... a right to payment of a monetary obligation, whether or not earned by performance, (i) for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, [or] (ii) for services rendered or to be rendered […]."

the Factoring Client's obligations to Sallyport. Sallyport provides notice to all of the Factoring Client's customers, i.e., its Account Debtors[3], that the Factoring Client's Accounts have been assigned to Sallyport for payment and that all obligations owed to the Factoring Client are to be paid directly to Sallyport (including amounts owed on Accounts which the Factor has not purchased). With respect to the Accounts that the Factor has purchased, once purchased, the Factoring Client does not retain any legal or equitable interest in the Accounts sold. *See* TEX. BUS. & COM. CODE ANN. § 9.318(a) ("[a] debtor that has sold an account . . . does not retain a legal or equitable interest in the collateral sold"). All legal and equitable interests in the sold Accounts, including the exclusive right to receive payment from the Account Debtor, vest with Sallyport. As to those Accounts which were not purchased, they constitute part of the Factor's secured collateral to which it holds a right to collect pursuant to Uniform Commercial Code §§ 9-406 and 9-607. *See* TEX. BUS. & COM. CODE ANN. §§ 9.406, 9.607.

13. In 2015, Sallyport and Proteus entered into, among other agreements, an Account Sale and Purchase Agreement ("ASPA"), whereby Sallyport would extend a discretionary factoring facility to Proteus. Pursuant to the ASPA, among other instruments, Proteus gave Sallyport a first position security interest in Proteus' assets, including but not limited to Proteus' Accounts. A true and correct copy of the ASPA is attached hereto as **Exhibit "2"** and incorporated herein by this reference. The copy of the ASPA includes redactions of certain financial information and account numbers for protection of privacy and proprietary interests. Capitalized terms used in this Complaint and not otherwise defined shall have the meaning given to them in the ASPA.

14. Sallyport's security interest in the assets of Proteus was perfected by, among other

---

[3] An "Account Debtor" is "a person obligated on an account […].." TEX. BUS. & COM. CODE ANN. § 9.102(a)(3).

things, a UCC-1 Financing Statement filed with the Office of Texas Secretary of State on November 6, 2015, bearing the file number 15-0035649578. True and correct copies of the UCC-1 Financing Statement, along with its continuation statement, are attached collectively hereto as **Exhibit "3"** and incorporated herein by this reference.

15. Plaintiff is informed and believes, and based thereon alleges, that Proteus is in the business of providing goods and services to cell phone tower construction and maintenance in the State of Texas. As a Factor, Sallyport purchased Accounts from Proteus arising from the goods and services that Proteus supplied to its customers. Pursuant to Uniform Commercial Code § 9-318, as a debtor that has sold an Account, Proteus did not retain any legal or equitable interest in the sold Accounts. All legal or equitable rights of Proteus, including the exclusive right to receive payment from the Account Debtor, vested with Sallyport.

16. Additionally, pursuant to the ASPA, Proteus granted to Sallyport the sole and exclusive right to collect the Accounts, whether purchased by Sallyport or not. [See Exhibit 2, ¶ 5.1.2.] Furthermore, upon the occurrence of an Event of Default under the ASPA, Plaintiff was authorized, among other things, to demand payment of, and collect, any Accounts, regardless of whether or not purchased. [See Exhibit 2, ¶ 7.2(g).]

17. An Event of Default has arisen under the ASPA due to, among other things, Proteus' failure to pay and perform its Obligations (as defined in the ASPA) to Sallyport.

## THE NOTICE OF ASSIGNMENT

18. Plaintiff is informed and believes, and based thereon alleges, that at all relevant times hereto, Defendant was a customer and Account Debtor of Proteus.

19. In or about April 2021, Sallyport sent a written notice of assignment to Defendant, advising Defendant that all of Proteus' Accounts had been assigned to Sallyport and

instructing Defendant to make all payments on Accounts, generated by Proteus, directly to Sallyport (the "Notice of Assignment"). Attached hereto as **Exhibit "4"** and incorporated herein by this reference is a true and correct copy of the Notice of Assignment that Sallyport sent to Defendant in April 2021. The attached copy of the Notice of Assignment contains redactions of financial account numbers.

20. Plaintiff is informed and believes, and on that basis alleges, that on or about March 4, 2020, Proteus entered into a written Master Construction Services Agreement with Defendant for Proteus' supply of goods and services to Defendant's cell phone tower construction and maintenance projects in exchange for Defendant's payment for those goods and services. Plaintiff is informed and believes, and on that basis alleges, that a true and correct copy of the Proteus-Pyramid Contract is attached hereto as **Exhibit "5"** and incorporated herein by this reference.

21. Under the terms of the ASPA, Proteus requested that Plaintiff purchase, and Plaintiff, in fact, purchased, numerous Proteus invoices, including those attached to this Complaint collectively as **Exhibit "6,"** reflecting amounts due from Defendant for goods and services that Proteus supplied to Defendant at Texas cell phone tower projects, between in or about September to December 2021 (the "Factored Accounts"), pursuant to the Proteus-Pyramid Contract and Proteus' State of Texas Electrical Contractor License #28682.

## DEFENDANT'S FAILURE TO PAY ON THE FACTORED ACCOUNTS

22. Since June 2021, Defendant has mailed checks in payment of various Proteus invoices directly to Plaintiff in compliance with Plaintiff's Notice of Assignment. On or about December 14, 2021, Defendant issued a check in the amount of $101,612.00 to Plaintiff for payment on Proteus invoice(s). Sallyport deposited the December 14, 2021 check with its bank,

but Defendant stopped payment on the check on or about December 22, 2021. Defendant stopped payment on the December 14, 2021 check, because Fundura, an alleged creditor of Proteus, made its own payment demand upon Defendant. The demand concerned the alleged obligations of Proteus to Fundura.

23. In response, Defendant and Plaintiff entered into a written Indemnity Agreement, dated as of January 12, 2022, by which (i) Defendant agreed to commence paying Sallyport, within three days after execution of the agreement, the amounts due on the Assigned Accounts (as defined in the Indemnity Agreement, which included the Factored Accounts, as defined herein) and (ii) Sallyport agreed to indemnify Defendant against claims of Fundura to the extent of such payments made and as provided in the Indemnity Agreement. The parties fully executed the Indemnity Agreement by January 12, 2022. A true and correct copy of the Indemnity Agreement is attached hereto as **Exhibit "1"** and incorporated herein by this reference.

24. Upon full execution of the Indemnity Agreement, on January 12, 2022, Defendant issued and mailed three new checks, totaling $246,584.60, to Sallyport, via overnight mail, which represented payment on a portion of the outstanding Factored Accounts. Plaintiff is informed and believes, and based thereon alleges, that the checks of January 12, 2022 included amounts necessary to replace the December 14, 2021 check that was the subject of Defendant's earlier stop payment order. Thereafter, Defendant advised Plaintiff that it had received a renewed payment demand and subpoena from Fundura, and Defendant stopped payment again, but this time on the three new checks, totaling $246,584.60 dated January 12, 2022. As a result, despite having entered the Indemnity Agreement with Defendant, Plaintiff has still not received Defendant's payment on the Factored Accounts, and Defendant's payment is overdue.

25. A true and correct copy of a statement of account listing the outstanding Factored

Accounts due from Defendant is attached hereto as **Exhibit "7"** and incorporated herein by this reference. As related in the statement of account, the total principal amount of Factored Accounts still due and owing from Defendant to Plaintiff is $482,904.60. Redactions have been applied to financial account numbers appearing in the statement.

### PLAINTIFF'S AUTHORITY TO COLLECT THE ACCOUNTS

26. Division 9 of the Uniform Commercial Code governs Plaintiff's authority to collect the Factored Accounts from Defendant.[4] As both owner of the Factored Accounts and holder of a duly perfected security interest in all of Proteus' Accounts, whether factored or not, Plaintiff has authority under the Uniform Commercial Code to obtain full payment on both the Factored Accounts from Defendant.

27. Pursuant to the ASPA, Plaintiff advanced funding to Proteus to purchase the Factored Accounts, and Plaintiff was granted a security interest in, and was assigned, all of Proteus' Accounts, whether factored or not. Moreover, the ASPA authorized Plaintiff to collect all Accounts of Proteus from Proteus' Account Debtors.

28. Pursuant to Uniform Commercial Code § 9-201(a), the terms of the ASPA are effective as between Proteus and Plaintiff and as against all other creditors of Proteus. TEX. BUS. & COM. CODE ANN. § 9.201(a) ("a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors"). Further, in light of the Event of Default under Proteus' Obligations to Plaintiff under the ASPA, and pursuant to Uniform Commercial Code § 9-607(a), Plaintiff has authority to both:

> i) "[n]otify an account debtor or other person obligated on collateral to make payment . . . to . . . the secured party," and

---

[4] Article 9 of the Uniform Commercial Code, as adopted in the State of Texas, governs the sale of Accounts and the transactions between Plaintiff and Proteus giving rise to Plaintiff's security interests in the Accounts. TEX. BUS. & COM. CODE ANN. § 9.109 (West)(a)(1)-(3).

>   ii) "[e]nforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment . . . to the debtor . . . ."

Tex. Bus. & Com. Code Ann. § 9607(a).

## PLAINTIFF'S EFFORTS TO COLLECT THE ACCOUNTS

29. Since, at least, in or about December 2021, Plaintiff has repeatedly demanded payment from Defendant for the Factored Accounts. As alleged *supra*, Defendant issued checks totaling $246,584.60 on January 12, 2022 in payment of a portion of the Factored Accounts, but Defendant ultimately stopped payment on those checks. Since that time, Defendant has refused to pay Plaintiff any portion of the Factored Accounts, leaving the full balance of the Factored Accounts due and owing to Plaintiff.

30. Plaintiff has found it necessary to employ attorneys to assist in collecting the sums due and has agreed to pay those attorneys the reasonable fees and expenses incurred in pursuing this matter. The Indemnity Agreement provides:

> "In the event that any party should bring an action or other proceeding against another party for the enforcement of, or seek a declaration as to, or assert by way of defense, any term or provision of this Agreement, there shall be an award of reasonable attorneys' fees and costs to the prevailing party or parties as the case may be."

[Ex. 1, Indemnity Agreement, ¶ 14.]

31. To the extent allowed under applicable law, Plaintiff seeks an award of Plaintiff's reasonable attorneys' fees and costs incurred in collection of the sums due and owing for the outstanding amounts.

## FIRST CLAIM FOR RELIEF
### (Claim of Holder in Due Course for Payment on Negotiable Instruments)

32. Plaintiff realleges, refers to, and incorporates by reference paragraphs 1 through 31, inclusive, of this Complaint as though fully set forth herein.

11

33. On January 13, 2022, Plaintiff took delivery from Defendant of the following negotiable instruments, which were checks issued by Defendant, payable to Proteus, c/o Sallyport CF, LLC, in the following amounts:

| Check No. | Check Date | Check Amount | Proteus Invoices Referenced in the Remittance |
|---|---|---|---|
| 27638 | 12/21/2021 | $15,750.00 | 23537H |
| 27692 | 12/28/2021 | $204,084.60 | 23596H, 23688H, 23690H, 23691H, 23707H, 23758H, 23759H, 23760H, and 253708H-C |
| 27733 | 01/04/2022 | $26,750.00 | 23765H |

34. Defendant issued the instruments in payment of a portion of the Factored Accounts, as outlined in the above table. Prior to issuing the instruments, Defendant had given its written approvals of the amounts billed in the invoices for, at least, seven of the eleven Factored Accounts paid with the instruments. For example, (i) between October 26-29, 2021, Donald Knowles of Pyramid approved Invoices 23691H, 23690H, and 23707H; (ii) on or about November 10, 2021, Charles Scudder, project manager of Pyramid, approved Invoices 23758H and 23760H; and (iii) on or about December 9, 2021, Theresa Leone, accountant for Pyramid, advised Plaintiff, by email, that Defendant had given final approval for Proteus Invoice No. 23688H. As for the balance of the invoices paid with the instruments, Defendant had stated no objection to their content, or to its liability therefore, prior to issuing the above-referenced instruments.

35. Plaintiff received the above-referenced instruments, issued by Defendant, on account of Plaintiff's duly attached and perfected lien against the Accounts generated by Proteus

and as assignee of the Factored Accounts, which Plaintiff had purchased from Proteus, for value, pursuant to the ASPA.

36. On its receipt of the negotiable instruments, Plaintiff immediately took the instruments and deposited them with its bank on January 13, 2022.

37. Thereafter, on or about January 18, 2022, Defendant improperly stopped payment on the checks in light of a renewed demand received by Defendant from Fundura. Plaintiff is informed and believes, and based thereon alleges, that, on or about January 13, 2022, Fundura served a renewed demand upon Pyramid for payment, with a subpoena, on account of the alleged obligations of Proteus to Fundura. Plaintiff is informed and believes, and based thereon alleges, that Fundura's demand was a claim for which Sallyport had otherwise agreed to indemnify Defendant pursuant to the Indemnity Agreement. However, without tendering the claim for indemnification or affording Sallyport a reasonable opportunity to accept and perform tender of the indemnity, Defendant stopped payment on the checks in response to Fundura's renewed payment demand, in breach of the Indemnity Agreement.

38. Plaintiff took the instruments on January 13, 2022, as a holder in due course, for value, in good faith, without notice that the instruments were overdue or had been dishonored or that there was an uncured default with respect to payment of another instrument issued as part of the same series.

39. Plaintiff also took the instruments without notice of any claim to the instrument under Tex. Bus. & Com. Code Ann. § 3.306 or any claim in recoupment under Tex. Bus. & Com. Code Ann. § 3.306. As a result, Plaintiff, as a holder in due course, did not take the instruments subject to any such claims which Defendant may belatedly assert as a defense to payment on the instruments or the underlying accounts receivable that they paid.

40. Plaintiff is entitled to payment of the instruments in the amount of $246,584.60.

## SECOND CLAIM FOR RELIEF
**(Breach of Indemnity Agreement)**

41. Plaintiff realleges, refers to, and incorporates by reference paragraphs 1 through 40, inclusive, of this Complaint as though fully set forth herein.

42. In January 2022, Defendant and Plaintiff entered into a written Indemnity Agreement, dated as of January 12, 2022, by which (i) Defendant agreed to commence paying Sallyport amounts due on the Assigned Accounts (as defined in the Indemnity Agreement, which included the Factored Accounts) within three days after execution of the agreement and (ii) Sallyport agreed to indemnify Defendant against claims of Fundura to the extent of such payments made and as provided in the Indemnity Agreement. The parties fully executed the Indemnity Agreement by January 12, 2022. A true and correct copy of the Indemnity Agreement is attached hereto as **Exhibit "1"** and incorporated herein by this reference.

43. Plaintiff is further informed and believes, and on that basis alleges, that Sallyport fully performed all of its obligations under the terms of the parties' Indemnity Agreement and that Sallyport satisfied all conditions precedent to Defendant's duty to issue payment for the Assigned Accounts, except for any obligations or conditions excused or waived by Defendant's nonperformance or other conduct.

44. As set forth *supra*, Plaintiff was the owner of or the assignee of the rights to payment on the Assigned Accounts (including the Factored Accounts) arising from the goods and services supplied to Defendant. Plaintiff also held a duly perfected security interest in the Assigned Accounts (including the Factored Accounts) under the ASPA. After selling and assigning the Assigned Accounts (including the Factored Accounts) to Plaintiff, Proteus retained no further interest in the Factored Accounts pursuant to Uniform Commercial Code § 9-318.

Further, pursuant to its rights as a secured creditor and under the terms of the ASPA, Plaintiff, alone, was entitled to receipt of payments from Defendant on all of the Assigned Accounts (including the Factored Accounts), pursuant to Uniform Commercial Code §§ 9-318, 9-406, and 9-607.

45.     Defendant breached the terms of the Indemnity Agreement by failing to issue payment to Plaintiff on the Assigned Accounts (including the Factored Accounts) in accordance with the Indemnity Agreement.

46.     Despite Plaintiff's demand, to date, Defendant has refused to pay Plaintiff any portion of the amounts due and owing on the Assigned Accounts (including the Factored Accounts).

47.     As a result of Defendant's breach, Plaintiff has been damaged in the amount of, at least, $482,904.60, plus accruing attorneys' fees, costs, and applicable prejudgment interest.

48.     Plaintiff has found it necessary to employ attorneys to assist in collecting the sums due and has agreed to pay those attorneys the reasonable fees and expenses incurred in pursuing this matter. The Indemnity Agreement provides for an award of attorneys' fees and expenses to the prevailing party in litigation relating to the agreement. To the extent allowed under applicable law, Plaintiff seeks an award of Plaintiff's reasonable attorneys' fees and costs incurred in collection of the sums due and owing for the Assigned Accounts (including the Factored Accounts).

**THIRD CLAIM FOR RELIEF**
(Accounting)

49.     Plaintiff realleges, refers to, and incorporates by reference paragraphs 1 through 48, inclusive, of this Complaint as though fully set forth herein.

50.     Because of the Indemnity Agreement of the parties hereto, and the acts and

conduct of Defendant set forth herein, Plaintiff is entitled to an accounting of all proceeds of the Factored Accounts and other Collateral of Plaintiff, now due and owing from Defendant on account of the goods and services that Proteus supplied to Defendant.

51. Plaintiff further requests that this Court enter orders for restitution and damages as found by the accounting.

## FOURTH CLAIM FOR RELIEF
### (Declaratory Relief)

52. Plaintiff refers to and incorporates by reference paragraphs 1 through 51 of this Complaint as though set forth fully herein.

53. An actual and justifiable controversy has arisen and now exists between the parties in which Plaintiff contends, and Defendant denies: (i) that Plaintiff holds a valid, first priority security interest in all of the Factored Accounts, among other assets of Proteus, including the Collateral under the ASPA, (ii) that Plaintiff is owner of the Factored Accounts with the sole right to collect payment of the Factored Accounts as assignee, and (iii) that Defendant is obligated to make payment to Plaintiff, pursuant to its obligations under and with respect to the Factored Accounts, the Indemnity Agreement, the Notice of Assignment, and the Uniform Commercial Code.

54. Plaintiff is informed and believes, and based thereon alleges, that a judicial determination is necessary and appropriate so that the parties may ascertain their respective rights and obligations with respect to the Indemnity Agreement and the Factored Accounts and pursuant to the Uniform Commercial Code for the outstanding debt.

55. As a result of the foregoing, Plaintiff is entitled to a declaratory relief judgment to the effect: (i) that, as purchaser of the Factored Accounts, Plaintiff holds the sole right to payment thereon; (ii) that, as the holder of a valid, first priority security interest in all of Proteus'

assets including all of the Factored Accounts, Plaintiff holds the sole right to payment on the Factored Accounts pursuant to Uniform Commercial Code §§ 9-318, 9-406, and 9-607; (iii) that Defendant is obligated to make payment to Plaintiff on Factored Accounts pursuant to its obligations under and with respect to the Factored Accounts, the Indemnity Agreement, the Notice of Assignment, and the Uniform Commercial Code; and (iv) that Plaintiff is entitled to an award against Defendant for the total amount owed under the Factored Accounts, in the amount of, at least, $482,904.60.

**WHEREFORE**, Plaintiff prays for judgment in favor of Plaintiff and against Defendant as follows:

As to the First Claim for Relief:

1. For monetary damages in an amount subject to proof of at least $246,584.60.

As to the Second Claim for Relief:

2. For monetary damages in an amount subject to proof of at least $482,904.60.

As to the Third Claim for Relief:

3. For an order requiring that Defendant account fully for all monies due on the Factored Accounts;
4. For damages as found by the accounting; and
5. For restitution as found by the accounting.

As to the Fourth Claim for Relief:

6. For a declaration that (i) as purchaser of the Factored Accounts, Plaintiff holds the sole right to payment thereon; (ii) as the holder of a valid, first priority security interest in all of Proteus' assets including all of the Factored Accounts, Plaintiff holds the sole right to payment on the Factored Accounts pursuant to Uniform Commercial

Code §§ 9-318, 9-406, and 9-607; (iii) Defendant is obligated to make payment to Plaintiff on the Factored Accounts pursuant to its obligations under and with respect to the Factored Accounts, the Indemnity Agreement, the Notice of Assignment, and the Uniform Commercial Code; and (iv) Plaintiff is entitled to an award against Defendant for the total amount owed under the Factored Accounts, in the amount of, at least, $482,904.60.

As to All Claims for Relief:

7. For prejudgment interest at the legal rate;

8. For attorney's fees and costs, pursuant to the Indemnity Agreement and as allowed by law; and

9. For such other and further relief as the court may deem just and proper.

DATED: March 7, 2022

Respectfully submitted,

Steven N. Kurtz
CA Bar No. 125972 (*pro hac vice* motion submitted herewith)
Lori E. Eropkin
CA Bar No. 253048, OK Bar No. 31052
(*pro hac vice* motion submitted herewith)
LEVINSON ARSHONSKY & KURTZ, LLP
15303 Ventura Blvd., Suite 1650
Sherman Oaks, CA 91403
Tel.: (818) 382-3434
Fax: (818) 382-3433
Email: skurtz@laklawyers.com
Email: leropkin@laklawyers.com

and

*/s/ Trent L. Rosenthal*
Trent L. Rosenthal
Texas Bar No. 17282300
Federal District ID No. 29
ROSENTHAL LAW FIRM, P.L.L.C.
trosenthal@rosenthallaw.com

18

675 Bering Drive, Suite 150
Houston, Texas 77057
Tel: (713) 647-8177
Fax: (713) 647-8127
Email: trosenthal@rosenthallaw.com

CO-COUNSEL FOR PLAINTIFF SALLYPORT
COMMERCIAL FINANCE, LLC

Code §§ 9-318, 9-406, and 9-607; (iii) Defendant is obligated to make payment to Plaintiff on the Factored Accounts pursuant to its obligations under and with respect to the Factored Accounts, the Indemnity Agreement, the Notice of Assignment, and the Uniform Commercial Code; and (iv) Plaintiff is entitled to an award against Defendant for the total amount owed under the Factored Accounts, in the amount of, at least, $482,904.60.

As to All Claims for Relief:

7. For prejudgment interest at the legal rate;

8. For attorney's fees and costs, pursuant to the Indemnity Agreement and as allowed by law; and

9. For such other and further relief as the court may deem just and proper.

DATED: March 7, 2022

Respectfully submitted,

_____
Steven N. Kurtz
CA Bar No. 125972 (*pro hac vice* motion submitted herewith)
Lori E. Eropkin
CA Bar No. 253048, OK Bar No. 31052
(*pro hac vice* motion submitted herewith)
LEVINSON ARSHONSKY & KURTZ, LLP
15303 Ventura Blvd., Suite 1650
Sherman Oaks, CA 91403
Tel.: (818) 382-3434
Fax: (818) 382-3433
Email: skurtz@laklawyers.com
Email: leropkin@laklawyers.com

and

/s/ Trent L. Rosenthal
Trent L. Rosenthal
Texas Bar No. 17282300
Federal District ID No. 29
ROSENTHAL LAW FIRM, P.L.L.C.
trosenthal@rosenthallaw.com